

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2005 DEC 13  PM 4: 09

LORETTA G. WHYTE
CLERK

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **EDDIE EUGENE SINGLETARY** | **CIVIL ACTION** |
| **VERSUS** | **NO. 05-299** |
| **ST. TAMMANY PARISH SHERIFF, ET AL.** | **SECTION "J" (1)** |

## ORDER AND REASONS

    Plaintiff, Eddie Eugene Singletary, a state prisoner, filed this *pro se* civil action pursuant to 42 U.S.C. § 1983 against the St. Tammany Parish Sheriff, the St. Tammany Parish Jail Medical Staff, the Louisiana Twenty-Second Judicial District Court, the Louisiana Department of Public Safety and Corrections, the District Attorney's Office, Sheriff Rodney Jack Strain, Warden Marlin Peachey, Walter Reed, an unidentified parole officer, and an unidentified corrections officer. In this lawsuit, plaintiff asserted various claims regarding his arrest and confinement. The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge.[1]

    All of plaintiff's claims have dismissed except his claims that (1) he was denied adequate medical care, (2) he was forced to sleep on a concrete floor without proper bedding, and (3) he was

---

[1] Rec. Doc. 45.

denied access to a toilet.[2] The only remaining defendants plaintiff has identified with respect to those claims are Sheriff Rodney Jack Strain and Warden Marlin Peachey.

Pursuant to Fed.R.Civ.P. 56, both the plaintiff and the defendants have filed motions for summary judgment.[3] The principal purpose of Fed.R.Civ.P. 56 is to isolate and dispose of factually unsupported claims. Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). In reviewing a motion for summary judgment, the Court may grant judgment when no genuine issue of material fact exists and the mover is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). "Procedurally, the party moving for summary judgment bears the initial burden of informing the district court of the basis for its motion, and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact." Taita Chemical Co., Ltd. v. Westlake Styrene Corp., 246 F.3d 377, 385 (5th Cir. 2001) (quotation marks and brackets omitted). The party opposing summary judgment must then "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Celotex, 477 U.S. at 324 (quoting Fed.R.Civ.P. 56); see also Provident Life and Accident Ins. Co. v. Goel, 274 F.3d 984, 991 (5th Cir. 2001). There is no "genuine issue" when the record taken as a whole could not lead a rational trier of fact to find for the nonmovant. Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

---

[2] Rec. Doc. 28; see also Rec. Doc. 18.

[3] Rec. Docs. 38 and 48.

Summary judgment will be granted against "a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. A complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. Id. at 322-23.

The Court has no duty to search the record for evidence to support a party's opposition to summary judgment. Ragas v. Tennessee Gas Pipeline Co., 136 F.3d 455, 458 (5th Cir. 1998). "The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which the evidence supports his or her claim." Id. Conclusory statements, speculation, and unsubstantiated assertions are not competent summary judgment evidence and will not suffice to defeat a properly supported motion for summary judgment. Id.; Douglass v. United Servs. Auto Ass'n, 79 F.3d 1415, 1429 (5th Cir. 1996). "[S]ummary judgment is appropriate in any case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant." Little v. Liquid Air Corp., 37 F.3d 1069, 1075-76 (5th Cir. 1994) (emphasis deleted) (internal quotation marks omitted).

The Court will first consider defendants' motion. Strain and Peachey argue that plaintiff's remaining claims must be dismissed because he failed to exhaust his administrative remedies prior to filing this lawsuit.

The Prison Litigation Reform Act of 1995 ("PLRA"), as amended, provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such

administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion is mandatory in cases covered by § 1997e(a). Porter v. Nussle, 534 U.S. 516, 524 (2002).

The United States Supreme Court has held that "the PLRA's exhaustion requirement applies to *all* inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Id. at 532 (emphasis added). The Supreme Court has further held that "an inmate must exhaust irrespective of the forms of relief sought and offered through administrative avenues." Booth v. Churner, 532 U.S. 731, 741 n.6 (2001). The United States Fifth Circuit Court of Appeals has noted that "[q]uibbles about the nature of a prisoner's complaint, the type of remedy sought, and the sufficiency or breadth of prison grievance procedures were laid to rest in Booth." Wright v. Hollingsworth, 260 F.3d 357, 358 (5th Cir. 2001).

If an inmate files in federal court an *in forma pauperis* complaint containing claims that have not been exhausted through available administrative remedies, those claims should be dismissed without prejudice, but with prejudice for the purpose of proceeding *in forma pauperis* pursuant to 28 U.S.C. § 1915. See Underwood v. Wilson, 151 F.3d 292, 296 (5th Cir. 1998). Plaintiff filed this lawsuit *in forma pauperis*.[4]

In support of their motion for summary judgment, Strain and Peachey have submitted an affidavit of Deputy Warden Greg Longino regarding the Administrative Remedy Procedure at the St. Tammany Parish Jail. Longino states:

1. I am a Deputy Sheriff of St. Tammany Parish and currently hold the position of Deputy Warden/Director of Inmate Affairs of the St. Tammany Parish Jail

---

[4] Rec. Doc. 2.

4

2.     and because of my duties I know the facts set forth in this Affidavit of my own personal knowledge.

2.     I have been employed by the St. Tammany Parish Sheriff's Office since July of 1990. I am POST (Peace Officer Standards and Training) certified in corrections and basic law enforcement. I was promoted to Deputy Warden/Director of Inmate Affairs in 1996.

3.     The St. Tammany Parish Jail has an administrative grievance process called the Administrative Remedy Procedure (ARP) in place and it is available to all inmates incarcerated at the St. Tammany Parish Jail.

4.     All inmates are entitled to use the jail's administrative remedy procedure, including Department of Corrections inmates, parish jail inmates, and pre-trial detainees.

5.     A summary of the jail's administrative remedy procedure may be found in the St. Tammany Parish Jail Inmate Handbook that is given to every inmate who is booked into the St. Tammany Parish Jail. I have certified and attached a true copy of the summary of the administrative remedy procedure as it appears in inmate handbook. A copy of the complete administrative remedy procedure may also be found in the jail law library wherein access to the procedure is available to all inmates.

6.     To initiate the grievance process, an inmate must fill out the inmate grievance form, which is made easily accessible to all inmates at the jail. In lieu of the form, an inmate may submit a written communication containing the words "This is a grievance through the ARP."

7.     Under the grievance procedure available at the time of the alleged incident, a grievance must be filed within ninety (90) days from the date the incident giving rise to the grievance occurred. Any grievance filed more than ninety (90) days after the incident is rejected as untimely.

8.     As the Deputy Warden/Inmate Affairs Director, I am the First Level Respondent in the grievance process. As the First Level Respondent, I must respond to the inmate's grievance within fifteen (15) days from the date the request is referred to me. This step is designated as the First Step Review.

9.     If an inmate is not satisfied with the results of the First Step Review, the inmate may appeal to the Warden within five (5) days of the inmate's receipt of the response by the First Level Respondent. This step is designated the

            Second Step Review. The Warden has twenty-five (25) working days to reply to the appeal.

10. If an inmate does not like the results of the Second Step Review, the inmate may appeal to the Sheriff within five (5) days of the inmate's receipt of the reply. The Sheriff has forty (40) working days to reply to the appeal. An inmate may only file suit if he or she is not satisfied with the final level of review.

11. The inmate, Warden, or Sheriff may request a five (5) working day extension of time in responding to the grievance.

12. If an inmate does not receive a response to a grievance or appeal within the time allowed by the First Level Respondent, Warden or the Sheriff, an inmate would still be required to follow through to the next step of the grievance process.

13. I have attached a copy of the blank forms used in the administrative remedy procedure, which include the inmate grievance form used by inmates to initiate the administrative grievance process, the form used for the First Level Respondent's response to the grievance, the form used for the Warden's Review Decision, and the form used for the Sheriff's Review Decision.

14. In the case of an inmate complaint about medical care, as the First Level Respondent, I refer the inmate's request to the medical department for a response.

15. Neither the Sheriff, the Warden, I, nor any of other Sheriff's deputy have the authority to make medical decisions. Medical decisions are made by personnel in the jail's medical department. As the First Level Respondent, I inform the inmate in writing that his grievance has been referred to the jail medical department. The medical department has the responsibility of acting upon and responding to the inmate's grievance regarding medical care.

16. If the inmate is not satisfied with the referral of his grievance to the medical department or is not satisfied with the response by the medical department to his grievance, he may request relief from the Warden. This step is designated the "Second Step Review."

17. In the case of Second Step Review regarding medical care, the Warden refers the request for review directly to Dr. Richard Inglese, the St. Tammany Parish

|     | |
|---|---|
|     | Jail Medical Director. The Warden's Review Decision is signed by both the Warden and the Jail's Medical Director. |
| 18. | If the inmate is not satisfied with the Warden's Review Decision, he may then request review by the Sheriff. Review by the Sheriff constitutes the final level of review in the jail's administrative remedy procedure. |
| 19. | If the inmate is not satisfied with the results of this final level of review of the jail's administrative remedy process, he may then file suit. |
| 20. | As Deputy Warden/Director of Inmate Affairs, I am familiar with the above captioned lawsuit and know of my own personal knowledge that inmate Eddie Singletary did not exhaust all his administrative remedies as required by the St. Tammany Parish Jail's Administrative Remedy Procedure prior to filing this lawsuit. |
| 21. | Eddie Singletary submitted an inmate grievance concerning the medical care he was receiving at the St. Tammany Parish Jail, which was received by the my [sic] office on December 13, 2004, and then accepted and referred to the jail's medical department in accordance with the jail's grievance procedure the same day. |
| 22. | The jail medical administrator, Dr. Escobar, responded to inmate Singletary's grievance on January 21, 2005, and determined that the grievance was unfounded and inmate Singletary received Dr. Escobar's response on the same day. |
| 23. | Inmate Singletary appealed Dr. Escobar's response to the Warden on February 1, 2005. The Warden, along with the jail's medical director, Dr. Inglese, responded to the appeal on February 18, 2005, also finding his grievance was unfounded. Inmate Singletary appealed the Warden Review Decision to the Sheriff on March 3, 2005. |
| 24. | The Sheriff responded to the appeal on March 15, 2005, also finding his grievance was unfounded. |
| 25. | Inmate Singletary filed his lawsuit prior to receiving any response to his grievance he submitted regarding his claims regarding his medical treatment. |
| 26. | Inmate Singletary never filed a grievance concerning his other condition of confinement claims which he pleads in the captioned lawsuit. |

27. Inmate Singletary did not even file a grievance (much less exhaust his administrative remedies) concerning the claims that he was forced to sleep on a concrete floor without proper bedding and that he was denied access to a toilet.

28. There are toilets in the holding cells of the St. Tammany Parish Jail and inmate Singletary had access to them when he was in a holding cell of the jail. Therefore, his claim that he was denied access to a toilet is not true.

29. Inmates in the holding cells of the St. Tammany Parish Jail are given blankets to sleep with. If the bedding was not sufficient, inmate Singletary could have filed a grievance, and if warranted, he could have been given additional bedding.

28. Inmate Singletary did not exhaust all his administrative remedies as required by the St. Tammany Parish Jail Administrative Remedy Procedure concerning his denial of medical treatment claim or his other conditions of confinement claims prior to filing his lawsuit.[5]

Defendants have also submitted an affidavit from Dr. Inglese, in which he states in pertinent part:

1. I am Dr. Richard Demaree Inglese and I know the facts set forth in this affidavit of my own personal knowledge.

....

8. Because of my duties as Medical Director at the St. Tammany Parish Jail, I am familiar with the above captioned matter and I have treated inmate Eddie Singletary on numerous occasions.

....

11. Eddie Singletary submitted an inmate grievance concerning the medical care he was receiving at the St. Tammany Parish Jail, which was received by the my [sic] office on December 13, 2004, and then accepted and referred to the jail's medical department in accordance with the jail's grievance procedure that same day.

---

[5] Rec. Doc. 48, Exhibit J.

12. Dr. Escobar responded to inmate Singletary's grievance on January 21, 2005, and determined that the grievance was unfounded and inmate Singletary received Dr. Escobar's response on the same day.

13. Inmate Singletary appealed Dr. Escobar's response to the Warden on February 1, 2005.

14. I, along with Warden Marlin Peachey, responded to the appeal of the grievance on February 18, 2005, also finding his grievance was unfounded. Inmate Singletary appealed the Warden Review Decision to the Sheriff on March 3, 2005.

15. The Sheriff responded to the appeal on March 15, 2005, also finding his grievance was unfounded.

16. Inmate Singletary filed his lawsuit prior to receiving any response to his grievance submitted regarding his claims regarding his medical treatment.

17. Inmate Singletary did not exhaust all his administrative remedies as required by the St. Tammany Parish Jail Administrative Remedy Procedure concerning his denial of medical treatment claim prior to filing his lawsuit.[6]

Defendant Peachey has also submitted an affidavit in which he states:

1. I am a Deputy Sheriff of St. Tammany Parish and currently hold the rank of Major and the position of Warden of the St. Tammany Parish Jail and because of my duties, I know the facts set forth in this Affidavit of my own personal knowledge.

2. As Warden of the St. Tammany Parish Jail, I am familiar with the above captioned lawsuit filed by former inmate Eddie Eugene Singletary.

3. Other than reviewing an appeal of a grievance concerning medical treatment, I was not personally involved in any of the acts alleged by plaintiff in his complaint in the captioned lawsuit.

4. I received an appeal of a grievance submitted by inmate Singletary February 1, 2005, concerning medical treatment he was receiving by the jail's medical department. I referred the appeal to Dr. Richard Inglese, the St. Tammany Parish Jail Medical Director, for his review. I, along with Dr. Richard

---

[6] Rec. Doc. 48, Exhibit C.

    Inglese, responded to the appeal on February 18, 2005, also finding that the grievance was unfounded.

5. Inmate Singletary then appealed my review decision to the Sheriff on March 3, 2005.

6. Eddie Singletary never appealed any response to a grievance to me involving any complaints regarding the other conditions of his confinement at the St. Tammany Parish Jail.

7. Inmate Singletary did not appeal any grievance concerning claims that he was forced to sleep on a concrete floor without proper bedding or that he was denied access to a toilet.

8. Inmate Singletary did not exhaust all his administrative remedies as required by the St. Tammany Parish Jail Administrative Remedy Procedure concerning his denial of medical treatment or his other condition of confinement claims prior to filing his lawsuit.[7]

Defendant Strain has likewise submitted an affidavit in which he states:

1. I am the elected Sheriff of St. Tammany Parish, Louisiana. I have held this office since July 1, 1996. Because of my duties as Sheriff, I know the facts set forth in this Affidavit of my own personal knowledge.

2. As Sheriff of St. Tammany Parish, I am aware of the above captioned lawsuit filed by inmate Eddie Eugene Singletary.

3. I was not personally involved in receiving any request from inmate Eddie Singletary that he needed medical attention or in relating any request for medical attention from Mr. Singletary to the medical department.

4. I was not personally involved in any of the events relating to the claims concerning Eddie Singletary's condition of his confinement at the St. Tammany Parish Jail, which were brought in the above captioned lawsuit.

5. Inmate Eddie Singletary appealed the Warden Review Decision regarding medical treatment to me, which was denied on March 15, 2005.

---

[7] Rec. Doc. 48, Exhibit I.

    6.      I never received any appeal of any grievance or response to a grievance from inmate Eddie Singletary involving any claims concerning the other conditions of confinement at the St. Tammany Parish Jail. I never received any appeal of any grievance from inmate Singletary involving any claims that he was forced to sleep on a concrete floor without proper bedding or that he was denied access to a toilet.

    7.      Inmate Singletary did not exhaust all his administrative remedies as required by the St. Tammany Parish Jail Administrative Remedy Procedure concerning his denial of medical treatment claim or his condition of confinement claims prior to filing this lawsuit.[8]

In his opposition to the motion filed by Strain and Peachey, plaintiff states only that he can prove "false statements" by defendants.[9] However, plaintiff submits no such "proof" and does not address in any fashion defendants' contention that he failed to exhaust his administrative remedies prior to filing this lawsuit.

The defendants' unrebutted evidence clearly shows that plaintiff filed no grievance whatsoever concerning his claims that he was forced to sleep on a concrete floor without proper bedding and denied access to a toilet. To allow him to proceed directly to federal court on those claims would contrary to both the letter and the intent § 1997e(a).[10]

---

[8]    Rec. Doc. 48, Exhibit H.

[9]    Rec. Doc. 58.

[10]    The United States Supreme Court has noted:

Once within the discretion of the district court, exhaustion in cases covered by § 1997e(a) is now mandatory. All "available" remedies must now be exhausted; those remedies need not meet federal standards, nor must they be "plain, speedy, and effective." ...

    Beyond doubt, Congress enacted § 1997e(a) to reduce the quantity and improve the quality of prisoner suits; to this purpose, Congress afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case. In some instances, corrective action taken in response to

Regarding plaintiff's claim that he was denied adequate medical care, the record is clear that he did file an administrative grievance on that claim on or about December 13, 2004.[11] The first-step response was issued on January 21, 2005. Plaintiff received that response and submitted an appeal on February 1, 2005.[12] The second-step response was issued on February 18, 2005. Plaintiff received that response and submitted an appeal on March 3, 2005.[13] The third-step response was issued on March 15, 2005, and was received by plaintiff on March 21, 2005.[14]

At the time plaintiff filed this lawsuit, he had not received the response to his administrative grievance, despite the fact that the deadline for the first-step response had passed. Nevertheless, that fact did not entitle plaintiff to proceed directly to federal court. Plaintiff was clearly put on notice that he could proceed to the next step of the three-step administrative remedy procedure if he failed to receive a response to his first-step grievance in a timely fashion. The very form on which plaintiff submitted his grievance advised him: "If you do not hear from the 'First Respondent' within 20 days

---

> an inmate's grievance might improve prison administration and satisfy the inmate, thereby obviating the need for litigation. In other instances, the internal review might "filter out some frivolous claims." And for cases ultimately brought to court, adjudication could be facilitated by an administrative record that clarifies the contours of the controversy.

Porter v. Nussle, 534 U.S. 516, 524-25 (2002) (citations omitted).

[11]  Rec. Doc. 48, Exhibit D.

[12]  Rec. Doc. 48, Exhibit E.

[13]  Rec. Doc. 48, Exhibit F.

[14]  Rec. Doc. 48, Exhibit G.

you may file a Request for a Warden's Review within the following 5 days."[15] The fact that the notice used the word "may" rather than "shall" is of no moment. Even if plaintiff perhaps believed that seeking further review was *optional* and that inmates were not *required* to request such review if their grievances went unanswered, that would not excuse the federal exhaustion requirement. See Valentine v. Newton, No. 9:00-CV-1369LEKGLS, 2002 WL 31309181, at *3 (N.D.N.Y. Aug. 15, 2002) (Sharpe, M.J.) (adopted by Kahn, J., on Sept. 11, 2002). The PLRA requires exhaustion of all "available" administrative remedies. Plaintiff was clearly aware that further administrative review was available, and he knowingly chose not to pursue it prior to filing his federal complaint.

Moreover, the fact that plaintiff pursued his grievance to the second and third steps of the administrative remedy procedure *after* filing this lawsuit is immaterial. The PLRA "plainly requires that administrative remedies be exhausted *before* the filing of a § 1983 suit, rather than while the action is pending." Wendell v. Asher, 162 F.3d 887, 890 (5th Cir. 1998) (emphasis in original). In Wendell, the Fifth Circuit noted:

> Absent a valid defense to the exhaustion requirement, the statutory requirement enacted by Congress that administrative remedies be exhausted *before* the filing of suit should be imposed. To hold otherwise would encourage premature filing by potential litigants, thus undermining Congress' purpose in passing the PLRA, which was to provide the federal courts some relief from frivolous prisoner litigation.

Id. at 890-91 (emphasis in original) (citations omitted).

In summary, based on the evidence presented by the parties, it is clear that plaintiff failed to exhaust his administrative remedies prior to filing this lawsuit regarding his claims that he was denied adequate medical care, forced to sleep on a concrete floor without proper bedding, and denied

---

[15] Rec. Doc. 48, Exhibit D.

access to a toilet. Therefore, the remaining defendants, Sheriff Rodney Jack Strain, Jr., and Warden Marlin Peachey, are entitled to judgment on those claims as a matter of law. Accordingly, their motion for summary judgment, Rec. Doc. 48, is **GRANTED** on that basis,[16] and the claims against Strain and Peachey are **DISMISSED WITHOUT PREJUDICE**, but with prejudice for the purpose of proceeding *in forma pauperis* pursuant to 28 U.S.C. § 1915.

In light of the foregoing, plaintiff's motion for summary judgment, Rec. Doc. 38, is **DENIED**.

New Orleans, Louisiana, this thirteenth day of December, 2005.

SALLY SHUSHAN
UNITED STATES MAGISTRATE JUDGE

---

[16] In light of that holding, the Court need to address the alternative arguments advanced in defendants' motion.